UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIS KEVIN BAIRD, JR.,

    Plaintiff,

    v.        Case No. 23-CV-1521-SCD

INTEGRATED MARKETING SOLUTIONS, LLC,

    Defendant.

## DECISION AND ORDER

    Willis Kevin Baird, Jr., worked in the receiving department of Integrated Marketing Solutions, via a staffing agency, as a forklift operator. Baird, who is Black, believed he was treated less favorably by supervisors because of his race. Baird complained to the distribution manager about it. The supervisors complained to the distribution manager about Baird's disrespectful attitude towards them when they pointed out his mistakes. Eventually, a meeting was called where the supervisors expressed their concerns; Baird spoke on topics that meeting participants felt were unrelated and accused one supervisor of being a racist. Baird worked in the IMS warehouse for eleventh months before IMS terminated his assignment after the meeting, on March 5th, 2021.

    Baird filed administrative complaints with the EEOC and the Wisconsin Department of Workforce Development. After the EEOC complaint was dismissed, Baird filed suit in federal court against his former co-workers, managers, and IMS. Chief Judge Pepper granted Baird leave to amend his complaint to include only IMS as a defendant. In his amended complaint, Baird asserted claims for race discrimination and retaliation. IMS has moved for

summary judgment on both claims. IMS also moved for summary judgment on a potential hostile work environment claim. Baird, who is proceeding without the assistance of counsel, did not respond to the motion. Because Baird has failed to present evidence from which a reasonable jury could find that IMS discriminated against him because of his race, or retaliated against him for complaining about discrimination, I will grant summary judgment in favor of IMS.

## BACKGROUND

As an initial matter, Baird did not respond to IMS's motion for summary judgment. "The rules require a party opposing a summary judgment motion to file a response to the moving party's proposed facts to make clear to the court which, if any, of the proposed facts are in dispute. Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment." *Anderson v. Am. Foods Grp. LLC*, Case No. 23-C-1287, 2024 U.S. Dist. LEXIS 231589, 2024 WL 5200449, at *2 (E.D. Wis. Dec. 23, 2024) (citing Civ. L.R. 56(b)(4)) (*aff'd*, No. 25-1069, 2026 U.S. App. LEXIS 1403 (7th Cir. Jan. 21, 2026)). The Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In accordance with local rules, the defendant supplied the required *pro se* notice alerting the plaintiff to the fact that the defendant's factual assertions would be taken as true if not contested by the plaintiff. ECF No. 54.

I will reference Baird's amended complaint for context, but not to find disputed facts. "It is well-settled law in this circuit that a non-moving party may not rely solely on the allegations in his complaint to defeat summary judgment." *Bivens v. Target Corp.*, Case No. 20-CV-1548, 2022 U.S. Dist. LEXIS 180381, 2022 WL 4776007, at *10 (E.D. Wis. Oct. 3,

2022) (citation modified). Although Baird proceeds pro se, he is not excused from complying with federal and local rules. *See Delices v. UW Bd. of Regents*, Case No. 18-cv-1839-bhl, 2023 U.S. Dist. LEXIS 40419, 2023 WL 2465880, at *8 (E.D. Wis. Mar. 10, 2023); *Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002) (the court will not search the record to attempt to make an argument for a pro se party). Accordingly, IMS's proposed facts are deemed admitted for the purpose of deciding summary judgment. *See* Civ. L.R. 56(b)(4).

IMS is a marketing agency that manufactures promotional merchandise. Def.'s Facts ¶ 2. IMS worked with a staffing agency, Parallel Employment Group, to provide workers for its warehouse in Kenosha (Wisconsin). *Id.* ¶¶ 3–4. Parallel maintained an HR representative onsite at the warehouse. *Id.* ¶ 11. IMS's warehouse had multiple departments, including receiving. *Id.* ¶ 17.

Key players the IMS warehouse—and the receiving department, in particular—included distribution director Patrick Lombard; distribution manager Adam Jorgenson; receiving lead supervisor Alicia Gutierrez; and receiving leads Joanna Gallegos and Yazmin Perez. *Id.* ¶¶ 3, 19, 20. Gutierrez has a child with Carlos Gama, a forklift operator in the receiving department. *See id.* ¶ 44. Gutierrez, Gallegos, and Perez are Hispanic. *Id.* ¶ 22. Gutierrez, Gallegos, and Perez oversaw the daily operations of the receiving department, which included inspecting "breakdown sheets." *Id.* ¶¶ 21, 35. Forklift operators filled out breakdown sheets while inspecting the contents of deliveries to ensure items in a shipment matched the purchase order or packing list. *Id.* ¶¶ 17–18, 21.

In April 2020, Parallel offered Baird a receiving assignment in IMS's warehouse, which he accepted. *Id.* ¶¶ 1, 6, 30. Baird began as a packer and was promoted to forklift operator after several weeks. *Id.* ¶ 33.

3

Problems began around September or October 2020, when the person who usually assigned Baird which trucks to unload was out due to COVID-19. *Id.* ¶¶ 38–39. In her stead, Gutierrez did this task for one month. *Id.* ¶¶ 42–43. Baird believed that Gutierrez showed favoritism towards her child's father, Gama, and Baird complained about this to Jorgensen. *Id.* ¶¶ 44, 46. Two weeks later, Baird followed up with Jorgenson to ask if Jorgenson had told Gutierrez about his complaints, because Baird felt Gutierrez was being more hostile towards him. *Id.* ¶ 48. In November or December, Baird complained to Jorgenson that he believed Gama was antagonizing Baird by blocking Baird's forklift with his forklift. *Id.* ¶ 48.

On Gutierrez's end, frustrations were also mounting. *See id.* ¶ 50. In November and December 2020, Gutierrez complained to Jorgenson about Baird's bad attitude when Gutierrez flagged mistakes in Baird's breakdown sheets. *See id.* ¶¶ 50, 51, 55. Jorgenson spoke with Baird about Gutierrez's feedback in November and December. *See id.* ¶ 53. Baird seemed receptive during the November conversation, but during the December conversation, Baird speculated that Gutierrez was out to get him because of his race, or she was jealous of Baird's money or wanted Gama's friend to have Baird's position. *See id.* ¶¶ 53–54, 59–61. Jorgenson asked Baird why he felt like Gutierrez was singling him out because of his race, and Baird said that "it was his feeling." *Id.* ¶ 63. Baird's race had not been discussed between either Gutierrez and Baird or Gutierrez and Jorgenson. *Id.* ¶¶ 62, 64–65.

Baird had similar communication challenges with Receiving Lead Gallegos, but not with Perez. *See id.* ¶¶ 68–69, 99. In January 2021, Gutierrez and Gallegos together complained to Jorgenson about Baird's disrespectful responses when they flagged mistakes in his breakdown sheets. *See id.* ¶¶ 68–73. In February or March 2021, Baird called the police to

report that Gutierrez had parked in a handicapped parking space in the warehouse lot. *Id.* ¶ 74.

In February 2021, Jorgenson spoke to Baird about switching departments. *See id.* ¶ 75. Baird declined because he had friends in receiving, and he was concerned that the offer was part of a plan to terminate his assignment. *See id.* ¶¶ 76, 79–81. Baird repeated his previous complaints about Gutierrez and added that Gutierrez was speaking to "him"—presumably, Gama—in Spanish, and that Gutierrez had called security to escort a different Black worker from the warehouse. *See id.* ¶¶ 82–85. Baird remained in the warehouse, and Jorgenson investigated the complaints. *Id.* ¶ 90. Several workers confirmed that they had seen Baird, Gutierrez, and Gallegos "exchanging words." *Id.* ¶ 91. Gutierrez had, in fact, instructed a Black worker to leave the building after he had called Gutierrez a b----, but security had not been involved. *Id.* ¶¶ 92–94, 110. Gutierrez did not have authority to hire, discipline, fire, or terminate an assignment of any IMS employees or Parallel workers, so Gutierrez could not have assigned Gama's friend to replace Baird. *Id.* ¶¶ 95–96.

On March 4, 2021, Gutierrez, Gallegos, and Perez complained to Jorgenson about Baird's disrespectful treatment of Gallegos and Gutierrez, although he was friendly towards Perez. *Id.* ¶¶ 97–99. The next day, Jorgenson called a meeting with Lombard, Gutierrez, Gallegos, Perez, Baird, and the onsite Parallel HR representative. *See id.* ¶¶ 102–03. During the meeting, Gutierrez and Gallegos expressed their concerns with Baird's tone towards them. *See id.* ¶¶ 104–05, 111. Gutierrez and Gallegos apologized to Baird for their frustration towards him. *See id.* ¶¶ 106, 123. During his deposition, Baird didn't recall what he said during the March 5th meeting. *See id.* ¶ 112. In Jorgenson's declaration, Jorgenson submits that Baird was "combative," "accusatory, hostile, and unprofessional," and rambled about unrelated

5

issues. *See id.* ¶¶ 113–17; Jorgenson Decl. ¶¶ 33–34, ECF No. 55. Baird accused Gutierrez of being racist, repeating this several times, and Gutierrez left the meeting in tears. *See* Def.'s Facts, ¶ 119; Jorgenson Decl. ¶ 33. The meeting continued in this fashion until Lombard ended the meeting. *See* Def.'s Facts, ¶ 120; Jorgenson Decl. ¶ 34.

After the meeting ended, Jorgenson and Lombard decided to terminate Baird's assignment, which Lombard communicated to Baird. *See* Def.'s Facts, ¶ 122. IMS cites Baird's conduct during the meeting as the basis for the termination. *See id.* ¶ 123. From Baird's perspective, Baird thinks Gutierrez and Gama manufactured Baird's attitude issues in order for Baird's position to be filled by an undocumented worker. *See id.* ¶¶ 98, 134. Baird has reported Parallel and IMS to ICE and believes his assignment might have been terminated because of his suspicions that IMS was hiring undocumented workers. *See id.* ¶¶ 137–38. Baird never made a complaint with Parallel, the staffing agency. *See id.* ¶ 129. Parallel did not fire Baird, and Parallel informed Baird that he could continue with other assignments. *Id.* ¶ 132.

On December 28, 2021, Baird filed charges of discrimination with the U.S. EEOC and the Wisconsin Department of Workforce Development, Equal Rights Division. *See* Compl. 5, ECF No. 1; Compl. Attach. 33, 36–37, ECF No. 1-1. Baird's EEOC complaint does not appear to be attached to his complaint in federal court. *See* Compl. Attach. 36–40. In his Wisconsin Equal Rights Division complaint, Baird alleged that, while working at IMS, he had reported to management Gutierrez's favoritism towards Gama and reported that Gutierrez made comments blaming African Americans for riots in Kenosha that occurred after Jacob Blake was shot by police. *See id.* Baird alleged after that, after making these complaints, Gutierrez treated Baird poorly and only spoke in Spanish over the radio or to announcing meetings, ultimately using her position to get Baird fired. *See id.*

6

On May 19, 2023, Wisconsin's Equal Rights Division found probable cause to believe that IMS may have violated the Wisconsin Fair Employment Law by discriminating or retaliating against Baird. *Id.* at 38–43. On August 16, 2023, the EEOC dismissed Baird's charge and issued him a Notice of Right to Sue. *See id.* at 34–35.

In November 2023, Baird sued IMS, Gutierrez, Jorgenson, Lombard, Gama, Gallegos, and Perez in federal court asserting claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. *See* Compl. Attach. 1. The defendants moved to dismiss the complaint, which Chief Judge Pepper granted. *See* Defs.' Mot. to Dismiss, ECF No. 9; Order Granting Defs.' Mot. to Dismiss, ECF No. 17. Chief Judge Pepper gave Baird an opportunity to amend his complaint to comply with federal and local rules and include only IMS as a defendant. Order Granting Defs.' Mot. to Dismiss, ECF No. 17.

Baird filed an amended complaint on October 18, 2024, and IMS filed an answer. *See* Am. Compl., ECF No. 19; Answer, ECF No. 20. In the amended complaint, Baird alleges discrimination based on race and retaliation based on complaints of discrimination. *See* Am. Compl. 4, 6.

While discovery was underway, the matter was re-assigned to me after all parties consented to magistrate-judge jurisdiction. *See* Scheduling Order, ECF No. 26; Order, ECF No. 27; ECF Nos. 2 & 13. On October 30, 2025, IMS moved for summary judgment on claims of race discrimination, retaliation, hostile work environment. *See* Def.'s Mem. in Supp. Mot. Summ. J. 21, 26–28, ECF No. 58. IMS also filed a memorandum in support of its motion and proposed undisputed material facts. *See* Civ. L.R. 56(b)(1). IMS complied with the local rules that specify procedures for moving for summary judgment against a pro se litigant. *See* ECF 57-9; Civ. L.R. 56(a); Civ. L.R. 7(j).

On December 1, 2025—Baird's response deadline—Baird moved for a 30-day extension. *See* ECF Nos. 53, 60. As basis for the request, Baird cited conflicts with his other pending legal matters, and said that he didn't receive IMS's motion in the mail. *See* ECF No. 60. IMS opposed the extension on multiple grounds, namely that there were no pending deadlines in Baird's other legal matters. *See* ECF No. 61. Nevertheless, I granted Baird a 30-day extension, so his deadline to respond became December 31, 2025. *See* ECF No. 62. Baird did not respond by this deadline (or at all). IMS filed its reply in support of summary judgment on January 14, 2025. *See* Def.'s Reply in Supp. Summ. J., ECF No. 63.

## SUMMARY JUDGMENT STANDARD

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).

To survive summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**DISCUSSION**

Baird asserts that IMS discriminated against him based on his race and retaliated against him for complaining about discrimination. IMS seeks summary judgment on each claim, and on a hostile work environment claim that Baird did not assert.

**I.      IMS is entitled to summary judgment on Baird's race-discrimination claim.**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To defeat summary judgment, Baird needs to point to evidence from which a reasonable juror could conclude that IMS terminated his assignment because of his race. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763 (7th Cir. 2016).

In the Title VII context, "courts employ the *McDonnell Douglas* burden-shift framework to determine whether a plaintiff has sufficient evidence to survive summary judgment." *Delices*, 2023 U.S. Dist. LEXIS 40419, at *30 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)). "Under this approach, the plaintiff bears the initial burden of proving a prima facie case of racial discrimination by demonstrating that (1) he is a member of a protected class; (2) his performance met the defendant's legitimate, nondiscriminatory expectations; (3) he suffered an adverse action; and (4) the defendant treated similarly situated persons outside plaintiff's classification more favorably." *Id.* "If the plaintiff makes this showing, the burden then shifts to the defendant to articulate [a] legitimate, non-discriminatory reason for the challenged action." *Id.* (citation modified). Summary judgment

is appropriate if a plaintiff fails to establish any one element of a prima facie case. *Lewis v. City of Chi.*, 496 F.3d 645, 652 (7th Cir. 2007).

Alternatively, a Title VII plaintiff could defeat summary judgment by showing that a jury could find that the evidence, viewed holistically, supports an inference of discrimination. *See Ortiz*, 834 F.3d at 763. "'Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded,' and the case must be assessed for an 'overall likelihood of discrimination.'" *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 933 (7th Cir. 2020) (quoting *Ortiz*, 834 F.3d at 765, 763).

IMS raises four defenses: first, IMS was not Baird's employer; second, Baird cannot establish a prima facie case of discrimination; third, even if Baird could establish a prima facie case, there's no evidence of pretext; fourth, the evidence, viewed holistically, would not allow a reasonable jury to find for Baird.

### A. IMS can still be liable under Title VII as an indirect employer.

IMS argues that, as a threshold matter, IMS was not Baird's "employer" for Title VII purposes. Title VII requires the existence of an employer-employee relationship. "Title VII defines 'employer' as 'a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person,' while an 'employee' is defined broadly, as 'an individual employed by an employer.'" *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 703–05 (7th Cir. 2015) (quoting 42 U.S.C. § 2000e) (citation modified). "[T]he defendant need not be the plaintiff's 'direct employer' if, based on 'the amount of control exerted by the [defendant] . . . [and] the "economic realities" of the employment relationship,' the 'defendant

10

can be deemed an indirect employer.'" *Romero v. Good Foods Group LLC*, 2017 U.S. Dist. LEXIS 232084 (quoting *Love*, 779 F.3d at 701–02). The five-factor test operationalizing this inquiry considers "(1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment." *Love*, 779 F.3d at 703–05.

Here, the factors are mixed, and some relevant facts are not in evidence. On the first and fourth factors, per the undisputed facts, Parallel handled applications, interviews, hiring, training, payroll, and assignments. Def's Facts, ¶ 11. Parallel "discusse[d]" the terms and conditions of an assignment during the onboarding process, but it's not clear who controlled those terms and conditions. *See* Def's Facts, ¶ 12. IMS employees Gutierrez and Jorgenson supervised Baird's work. Jorgenson and Lombard could terminate Baird's assignment, but they could not fire Baird from Parallel. Parallel maintained an onsite HR representative, but it's not clear whether that individual had any authority over Baird. As for the second factor, Baird's promotion from "packer" to "forklift operator" after a few weeks suggests that Baird acquired additional skills on-the-job. Details on factors three and five are not in the record.

Because the factors weigh in both directions, I will assume for the purpose of deciding summary judgment that IMS was Baird's indirect employer and can be held liable under Title VII.

### B. Baird has not proven a prima facie case of race discrimination.

Under the *McDonnell Douglas* burden-shifting framework, a "plaintiff bears the initial burden proving a prima facie case of racial discrimination by demonstrating that (1) he is a member of a protected class; (2) his performance met the defendant's legitimate,

11

nondiscriminatory expectations; (3) he suffered an adverse action; and (4) the defendant treated similarly situated persons outside plaintiff's classification more favorably. If the plaintiff makes this showing, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action." *Delices*, No. 18-cv-1839-bhl, 2023 U.S. Dist. LEXIS 40419, at *30 (citation modified). Here, IMS concedes that Baird is a member of a protected class (Black), and that he suffered an adverse action (termination). However, no evidence would allow a reasonable jury to find that Baird's performance met IMS's legitimate, nondiscriminatory expectations, or that IMS treated similarly situated persons outside Baird's protected class more favorably.

Federal court is not "a super-personnel department that can substitute its criteria for an employer's for hiring, promoting, or disciplining employees." *Joll*, 953 F.3d at 933 (citation modified). "Determining whether an employee is meeting an employer's legitimate expectations thus mandates looking at the employee's job performance through the eyes of her supervisors at the time of her termination." *Esaw v. Comcast Cable Commc'ns Mgmt., LLC*, 2025 U.S. Dist. LEXIS 60474, 2025 WL 965020, at *19 (N.D. Ill. March 31, 2025) (citation modified). The undisputed evidence shows that, at the time of Baird's termination, Lombard and Jorgenson thought that Baird's performance during the meeting fell below their legitimate, non-discriminatory expectations.

There is also no evidence that individuals outside of Baird's class were treated more favorably. Baird complained generally that Gutierrez treated Hispanic individuals more favorably than him, and Gama specifically was treated more favorably because he was the father of Gutierrez's child. But the undisputed facts do not support this inference. "[B]are assertions of covert racial animus are insufficient to raise a factual dispute." *Young v. Brew*

12

*City*, No. 19-CV-464, 2021 U.S. Dist. LEXIS 28229, 2021 WL 571102, at *12 (E.D. Wis. Feb. 16, 2021) (citing *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) ("subjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact." (internal quotation omitted)). Moreover, even if Gutierrez did favor Gama, it appears there was a personal—rather than racial—reason for that favoritism. Baird has not proven a prima facie case of race discrimination under the *McDonnell Douglas* burden-shifting approach.

> **C.  The evidence, considered as a whole, does not support an inference of discrimination.**

The Seventh Circuit has emphasized that "evidence is evidence," and must be considered holistically. The standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz*, 834 F.3d at 765. "The case must be assessed for an overall likelihood of discrimination." *Joll*, 953 F.3d at 933 (citation modified). Again, based on the undisputed facts, the evidence would not permit a reasonable jury to conclude that Baird's race caused his termination because Baird's bare assertions of covert racial animus are not sufficient to raise a factual dispute.

**II.  IMS is entitled to summary judgment on Baird's retaliation claim.**

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an employee because he opposed any practice made unlawful by the Act, or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (citation modified); 42 U.S.C. § 2000e-3(a).

To defeat summary judgment, Baird must "offer evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (citation modied). "Ultimately, the inquiry comes down to one question: 'Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused' the materially adverse action?" *Lesiv*, 39 F.4th at 911 (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)); *see also Ortiz*, 834 F.3d at 765.

According to the undisputed facts, Baird was terminated because of his conduct during the March 5th meeting, where he accused Gutierrez of being a racist. Generally, calling someone a racist is not statutorily protected activity "because 'the allegation is not that the [individual] is engaging in [an] unlawful employment practice, but that [the individual] has a racial intolerance.'" *See Ferrer v. Detroit Club Mgmt. Corp.*, 2025 U.S. Dist. LEXIS 166857, 2025 WL 2472123, *23–24 (E.D. Mich Aug. 27, 2025) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)); *see also Davis v. Papa John's Corp.*, 2021 U.S. Dist. LEXIS 83006, at *15 (S.D. Ind. April 19, 2021) ("A Title VII retaliation claim relates to protected activity; it is not a vehicle to sue a coworker whose complaints about your workplace conduct led to you being fired.").

Baird did engage in statutorily protected activity when he complained to Jorgenson that he felt Gutierrez treated him differently because of his race. "Title VII gives plaintiffs flexibility with respect to the format of the complaint; statutorily protected activity can range from filing formal charges to voicing informal complaints to superiors." *Byrd v. Wis. Dep't of Veterans Affs.*, 98 F. Supp. 3d 972, 976 (W.D. Wis. 2015). Baird informally complained about Gutierrez over multiple months, beginning in October or November, and raised specifically

race-related concerns in December and February. During that period, Gutierrez and Gallegos's complaints to Jorgenson about Baird's performance and attitude were also increasing.

There is no evidence to support an inference that Baird's informal complaints about discrimination to Jorgenson caused Baird's termination. To defeat summary judgment, Baird needs to offer evidence to support an inference that a retaliatory motive was the but-for cause of his termination. *Lesiv*, 39 F.4th at 918. "The requirement of but-for causation in retaliation claims does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014). Although Baird was terminated within a few months of engaging in protected activity, temporal proximity alone is insufficient to establish an inference of retaliatory motive. *Vassileva v. City of Chi.*, 118 F.4th 869, 875 (7th Cir. 2024). No evidence would allow a reasonable jury to infer that a retaliatory motive was the but-for cause of Baird's termination.

Accordingly, IMS is entitled to summary judgment on Baird's retaliation claim. The undisputed facts show that a reasonable jury could not find a causal connection between a statutorily protected activity and Baird's termination.

### III. IMS is entitled to summary judgment on Baird's hostile work environment claim.

IMS moved for summary judgment on a hostile work environment claim under Title VII. Baird did not specifically allege this count in his amended complaint. "To prove a claim for hostile work environment based on race, an employee must show that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by

15

Case 2:23-cv-01521-SCD   Filed 02/17/26   Page 15 of 16   Document 65

creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016) (citation modified). Based on these undisputed facts, a reasonable factfinder could not find for Baird because the facts do not support an inference that Baird was harassed based on his race, or that Baird was harassed so severely or pervasively that it altered the conditions of his work environment.

## CONCLUSION

There is no evidence from which a reasonable jury could find that IMS discriminated against Baird because of his race or retaliated against Baird for complaining about discrimination. Accordingly, for all the foregoing reasons, the court **GRANTS** IMS's motion for summary judgment, ECF No. 54.

The clerk of court shall enter judgment that this action is dismissed.

**SO ORDERED** this 17th day of February, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge